[No. 3765.]

## KENNEY v. JAYNES ET AL.

1. CONVEYANCES —SUBSEQUENT PURCHASER—NOTICE.
Where a purchaser of land had notice that a prior deed to the same land had been placed in escrow, but also knew that the deed not having been taken up within the time prescribed had been returned to the grantor's agent, and the deed was afterwards returned by the agent to escrow and delivered, he having no knowledge of its return or delivery, he was not charged with notice, he having purchased the property after the return of the escrow deed and placed his deed on record before the prior deed was recorded.

2. PRINCIPAL AND AGENT—CONVEYANCE—NOTICE.
One who bought land for himself and had a deed made to himself, but before the deed was signed and acknowledged sold the land and for convenience erased his name as grantee and inserted that of the person to whom he sold, did not thereby become the agent of the grantee so as to charge the grantee with whatever notice he had of a prior deed.

*Appeal from the District Court of Mesa County.*

Mr. S. N. WHEELER and Mr. W. HENRY SMITH, for appellant.

Mr. CHARLES E. CASWELL, for appellees.

MR. JUSTICE GODDARD delivered the opinion of the court.

This is an action brought by Alvira D. Kenney, appellant, against the appellees, to quiet her title to certain real estate situate in Mesa county, Colorado. The plaintiff claims title to the premises under and by virtue of a deed from one Ada L. Young, dated and acknowledged December 2, delivered December 24, 1895, recorded January 11, 1896, and a deed from B. R. Hall dated September 23, and recorded December 6, 1895. The defendants claim title under and by virtue of a deed from Ada L. Young to E. E. Jaynes dated November 24,

acknowledged December 24, 1895, delivered and recorded January 3, 1896 ; and a deed of B. R. Hall to one D. R. Crosby, dated November 21, and recorded November 26, 1895 ; and deed of Crosby to E. E. Jaynes dated December 17, 1895, and recorded January 3, 1896.

It will be seen that the deed from Hall to plaintiff ante-dates the deed from same grantor to Crosby, but that the latter was first recorded ; that the deed from Mrs. Young to plaintiff bears a date, and was signed and acknowledged, prior to the time the one executed by her to the defendant E. E. Jaynes was signed and acknowledged, but that the latter was first filed for record.

The contention of plaintiff is that the defendant Jaynes took his deed from Mrs. Young with notice of the execution and delivery of the deed of Mrs. Young to her; and that Crosby took his conveyance from Hall with notice of the execution and delivery of the deeds from Hall to her; and this deed being of record at the time Crosby executed his deed to Jaynes, the latter took title from Crosby with notice of her rights.

The evidence introduced as to these respective transactions is quite voluminous, and upon some of the important features is conflicting. It appears that Hall held a tax title to the land, and on November 19, 1894, he entered into an agreement with plaintiff to convey this title to her if, within sixty days, she should pay the amount of taxes and penalties allowed by law, and paid by him. There were two extensions of this agreement ; first to March 15, and later to September 20, 1895. Kenney, the husband and agent of plaintiff, testified that he exhibited this contract to Crosby, and that he also told Crosby about the Hall deed, which, although signed and acknowledged, was still held by Hall. Crosby denies that he had any notice or knowledge of the Hall deed or ever saw the agreement until after he negotiated for, and received, his deed from Hall; and it appearing that the agreement had at that time expired by limitation, the court below found, from all the evidence introduced upon this

matter, that he had no notice that plaintiff had any rights in the land by virtue of the contract, or under the deed from Hall, delivered to her husband December 2, 1895; and that he acquired the Hall title free and clear of any equities of plaintiff therein. This finding of the court below, based as it is upon conflicting testimony, must, under the doctrine so frequently announced, be accepted as conclusive upon this review. The circumstances attending the Young transaction are in brief as follows:

The plaintiff originally owned the land. Under and by virtue of certain attachment proceedings instituted by Henry W. Ross, the land was sold by the sheriff. Afterwards, and on September 28, 1894, a sheriff's deed was made to Ada L. Young, who held the title under an arrangement with plaintiff that she might redeem the property at any time she could raise the money to pay the claim which the property was sold to satisfy. For the purpose of enabling plaintiff to re-acquire the title to the land, she on December 2, 1895, signed and acknowledged the deed to plaintiff, which on December 9, was deposited in escrow in the First National Bank of Grand Junction, with instructions to be delivered on payment of the sum of $1,000 on or before December 16. Previous to this time, one George Smith, who was engaged in the real estate business in Grand Junction, had had correspondence with Kenney in regard to the sale of the land; and through a Mr. Lane had obtained an offer on the part of Kenney, to sell at the price of $6,500, and an agreement to pay a commission on such sale. Mr. Kenney, the husband of plaintiff, and her agent, visited Grand Junction during the latter part of November, and saw Smith about selling the land; told him he would have to make some disposition of the property; that a deed was there and he could not keep it much longer. Smith had sold other lands to Jaynes, and the Kenney land, in his judgment, being a choice piece, he advised Jaynes to purchase it; and finally got a proposition from him to pay $6,000 for the land, $3,000 cash, and $3,000 in ninety days. This was the last day the deed was to remain. He informed

Kenney of this offer, and they went to the bank to ask that the deed be kept another day. Upon the refusal of Mr. Jones, an officer of the bank, to hold the deed longer, he (Smith) drove out to Jaynes' place, explained the circumstances to him, that there was a certain deed in the bank which Kenney had to take up before he could give title, and that it was necessary the money be paid that day or the bank would return the deed; and obtained a note from him to the bank to hold the deed another day in order to enable him (Jaynes) to pay the price and take it up.

The next day this deal fell through by reason of Kenney and Jaynes being unable to agree upon the terms of payment, Kenney requiring payment of the purchase price in cash, Jaynes refusing to pay except as he had proposed to Smith—part cash and part in notes. Kenney, failing to take up the deed in the time specified, to wit, on December 17, it was returned to Mrs. Young's attorney at Ogden, Utah, and was again returned to the bank at Grand Junction on December 19, and taken up by Kenney on December 24, who returned to his home in Utah without placing the same upon record, and it was not filed for record until January 11, 1896. Jaynes had been informed by Smith that unless the deed in the bank was taken up by the 18th it would be returned to the party who sent it to the bank, which in fact did occur. But he did not know of its subsequent return to the bank, or its delivery to Kenney, until after the Young deed, under which he now claims title, had been delivered to him.

It is insisted, however, by counsel for appellant, that notwithstanding the finding of the court below to the contrary, Smith was the agent of Jaynes in this transaction, and any knowledge or information that he had would bind his principal. An examination of the evidence satisfies us that the court is correct in its finding that while Smith endeavored to induce Jaynes to purchase, and tried to arrange satisfactory terms, he was not acting for Jaynes but for himself, and for the commission he was to receive from Kenney in

case he secured a purchaser, and was correct in its conclusion "that the deposit of the Young deed in the First National Bank, and the information Jaynes received regarding this transaction, was not of that character to put him upon inquiry, or charge him with notice that plaintiff had any rights thereunder."

It also appears that Crosby, in the latter part of November, 1895, having obtained the tax deed above mentioned from Hall, opened negotiations with a Mr. Gilbert of Chicago, the agent of Mrs. Young, for the purchase of the land; made an offer of $1,000, prepared a deed and forwarded it to a bank in Chicago, requesting that it be acknowledged and returned, to be delivered to him upon the payment of the sum offered. In reply he received a letter from Gilbert, in which he was informed that negotiations were pending between Mrs. Young and Mrs. Kenney relative to the same lands, and that he was not advised whether they would be closed or not; if not, then the offer from Crosby would be accepted. About this time Crosby was informed by Ross that he (Ross) assigned his certificate of purchase of the land to Mrs. Young, with the understanding that she would hold the property for the Kenneys, who were anxious to redeem it from under that sale, and informed him that Kenney was doing all he could to redeem the property. On the day that the deal between Jaynes and Kenney fell through, Crosby, being informed that the deed from Mrs. Young to Mrs. Kenney had been returned, told Smith that he could sell Jaynes the property for $2,000 less than Kenney had offered; showed him the letter from Gilbert, said he would go at once to Chicago, and if the Kenney deed was returned he would buy the land for Jaynes. On December 19 he left for Chicago, called upon Gilbert, and informed him that the deed which had been deposited in the First National Bank in Grand Junction had been returned. Gilbert, who had some advice in regard to the matter, believed that the Kenney transaction with Mrs. Young would not be closed. The deed which had been forwarded by Crosby to the bank in Chicago was taken out and

the names of Delaplain and Crosby, who were the original grantees, were erased, and the name of Jaynes inserted as the grantee, was signed and acknowledged by Mrs. Young on December 24, 1895, and forwarded to the First National Bank of Grand Junction, to be delivered upon the payment of the sum agreed upon, and was delivered to Jaynes on January 3, 1896. As soon as it was delivered Crosby was notified by his partner, Delaplain, that the transaction had been closed, and thereupon he called again upon Gilbert. Gilbert testifies that at that time he notified Crosby that the deed to Mrs. Kenney had been delivered. This Crosby denies, and the court below, upon the evidence, finds that Crosby's statement is correct. The court further finds, what is evidently the fact, that if he did so notify Crosby at that time it was after the delivery of the deed of Young to Jaynes, and that knowledge or notice brought to the attention of Crosby after that deal had been consummated could not be any notice or knowledge which could affect Jaynes' rights. The court concludes, from all the testimony introduced touching the Crosby transaction, that he was acting in his own behalf, and not as an agent of Jaynes. We think this conclusion finds ample support in the evidence and the circumstances attending this transaction. It is manifest that at the outset Crosby was acting for himself, and without any reference to the ultimate disposition of the property to Jaynes. The deed sent to Chicago was made out to him and his partner Delaplain as the grantees, and the consideration offered was $1,000. His proposition to Smith was, that if he could procure the title he would sell the land to Jaynes for $4,000, which Smith knew, from the correspondence that had been shown him, was largely in excess of the price which Crosby had offered Mrs. Young for the land. He never spoke to Jaynes in regard to the land, and was not employed, or requested, by him to purchase the property. He went to Chicago to secure the title on his own behalf, although with the expectation of subsequently transferring it to Jaynes at a profit. Jaynes, at the time he took the deed, did not know

what price Crosby paid for the land, while, as a matter of fact, he paid one price and received from Jaynes another and much larger one, which he could not have done if, as contended by counsel for appellant, he was acting as Jaynes' agent in purchasing the land from Mrs. Young. We think that the court below correctly found that, under these circumstances, the fact that he inserted Jaynes' name in the deed as grantee did not make him Jaynes' agent, but that this was done for his own convenience. It may be conceded, as contended by counsel for appellant, that Crosby, by reason of his prior knowledge of the conditions under which the title was held by Mrs. Young, was not a *bona fide* purchaser without notice. Yet, since he was acting in his own behalf in consummating this transaction, this fact would not affect Jaynes, who, as it clearly appears, neither directly nor through any one who represented him had any knowledge of her rights, or notice that would put him upon inquiry regarding them. So far as he was advised Mrs. Young was vested with, and had power to convey, a good title to the property; and being also advised of the fact that the deed from her to Mrs. Kenney had been returned by the bank to the party who forwarded it because of the failure to comply with the conditions of escrow, he was entitled to assume not only that Mrs. Young had the power to convey a good title, but that the transaction between her and Mrs. Kenney was at an end, and he could safely purchase the property without making further inquiry as to that fact. As the court below well said, it would be an extremely dangerous doctrine to assume that because at one time a man knew a deed had been deposited in escrow, that thereafter he would have to go about and make inquiry as to what had become of that deed before he could acquire title.

After a careful examination of all the evidence contained in the record we are satisfied that the findings of the court below are correct, and that its judgment should be affirmed, which is accordingly done.

*Affirmed.*